UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 24-CR-362 (JMC) |
| v. | : | |
| | : | |
| TYLER HENSON, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Tyler Henson has pleaded guilty to two Class B misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Henson to 21 days' incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I.      Introduction

Defendant Tyler Henson, a 31-year-old shop technician from Chambersburg, Pennsylvania participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the

peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Henson pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) and (G). The government's recommendation is supported by Henson's (1) observation of chaos on the grounds before entering the building; (2) entering the Capitol through a broken window, and (3) staying inside the building for nearly 30 minutes while the alarms were ringing around him.

The Court must also consider that Henson's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Henson's crime support a sentence of 21 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution in this case.

## II.    Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary repetition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 25 at 1-4.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Defendant Henson's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Henson traveled from his home in Chambersburg, Pennsylvania to Washington D.C. with his two cousins, Stephen Oseen and Jamie Charlesworth, to attend the "Stop the Steal" rally. When he arrived in D.C., Henson went to the Ellipse and later followed the crowd to the U.S. Capitol where he participated in the riot there.

Henson entered the restricted grounds of the U.S. Capitol and traveled to the Upper West Terrace near the Senate Wing Doors. He stood on the Upper West Terrace before entering the building amongst a crowd screaming and chanting, all trying to enter the building. *See* Image 1 and Exhibit 1.[2]



*Image 1 – Still Image from Open Source of Henson Standing Outside the Senate Wing Door (Exhibit 1 at 01:37)*

At approximately 2:50 p.m., Henson entered the U.S. Capitol Building by climbing through a broken window near the Senate Wing Doors. At this time, alarms were ringing and police officers were present in riot gear in the lobby. *See* Image 2 and Exhibit 2.

---

[2] All referenced exhibits in the government's sentencing memorandum are videos which the still images originate from. The videos were shared with all parties via USAfx as of the date of this filing.



*Image 2 – Still from CCTV footage of Henson Entering the Capitol Through a Window Near the Senate Wing Doors at Approximately 2:50 p.m. (Exhibit 2 at 1:12)*

While inside the building, Henson stayed in the lobby area near the ringing alarms for nearly thirty minutes – talking with his cousins and only exiting once more police officers arrived to direct rioters out of the building.[3] At approximately 3:17 p.m., Henson exited the building through the Senate Wing Doors. *See* Images 3-4 and Exhibits 2, 4.



*Figure 3 – Still Image of Henson (labeled in red), Oseen (labeled in green), and Charlesworth (labeled in yellow) inside the Capitol. (Exhibit 2 at 2:51)*

---

[3] CCTV footage of this timeframe is attached as Government's Exhibits 2 and 4.



*Image 4 – Henson Exiting the Building at Approximately 3:17 p.m. (Exhibit 4 at 00:50)*

*FBI Interview of Henson*

On August 19, 2021, Henson was interviewed by the FBI an admitted to being present on the U.S. Capitol grounds as well as inside the building. He stated that he went to D.C. with his cousins and attended the Trump Rally. He also admitted to taking videos of himself at the Capitol and posting it on his Facebook account.

*The Charges and Plea Agreement*

On August 7, 2024, the United States charged Henson by a four-count Information with violating 18 U.S.C. § 1752(a)(1) and (a)(2) and 40 U.S.C. § 5104(e)(2)(D) and (2)(G). On April 22, 2024, pursuant to a plea agreement, Henson pleaded guilty to the § 5104 counts.  By plea agreement, Henson agreed to pay $500 in restitution to the Architect of the Capitol.

**III.    Statutory Penalties**

Henson now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (2)(G). As noted by the plea agreement and the U.S. Probation Office, Henson faces up to six months of

imprisonment and a fine of up to $5,000. Henson must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply here. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. As described below, the Section 3553(a) factors weigh in favor of a sentence of 21 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Henson's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Henson, the absence of violent or destructive acts is not a mitigating factor. Had Henson engaged in such conduct, he would have faced additional criminal charges.

The most aggravating factor in this case is Henson's blatant disregard of the police officers and the chaos around him. Not only did he observed police presence outside of the building, he disregarded and climbed through a broken window to gain entry to the Capitol building. By climbing through that broken window, he was aware of the destructiveness of the riot. But instead

of immediately exiting, Henson stayed inside the Senate Wing Door lobby area for nearly thirty minutes as alarms were blaring and police were present to make sure rioters could not further breach the building. Ultimately, Henson only left once police reinforcement came to push rioters out. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 21 days' incarceration in this matter.

### B. Henson's History and Characteristics

As set forth in the PSR, Henson does not have a criminal history and he has been complaint with the conditions of his pretrial release. ECF No. 47 at ¶¶ 7, 24-30. The PSR does not list any severe health problems, substance abuse or mental illness. Id. at ¶¶ 31-42. The PSR acknowledges that Henson had a difficult childhood (*id.* at ¶ 32), however this does not explain or mitigate his crimes on January 6, 2021. Prior to January 6, Henson graduated from Biglerville High School and he currently works as a shop technician for a car mechanic company. Id. at ¶¶ 46, 56.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this

defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. Henson's actions on January 6, 2021, indicate the need for a sentence that provides specific deterrence. Henson did not accept the results of the 2020 presidential election, so on January 6 he went to Washington D.C. with his cousins, invaded the Capitol, took videos, posted them to his Facebook account, and stayed in an area where police officers were trying to clear for nearly 30 minutes. Henson admitted to this conduct prior to being arrested and accepted responsibility. However he has expressed no remorse. Although his conduct after January 6 can be considered as a mitigating factor, his behavior on January 6 shows a willful and alarming disregard of the chaos and violence that surrounded him. Henson's actions on January 6 makes it clear that a sentence involving incarceration is needed to successfully deter

Henson from such thoughtless behavior in the future.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence Henson based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Henson has pleaded guilty to Counts Three and Four of the Information, charging him with violations of 40 U.S.C. §§ 5104(e)(2)(D) and (2)(G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

In *United States v. Savannah McDonald*, 21-cr-00429 (CRC), the defendant also pled guilty to violating 40 U.S.C. § 5104(e)(2)(G). Similar to Henson, McDonald spent time on the West Front of the Capitol grounds and observed chaos before entering the Capitol building, and entered near the Senate Wing Door (through the Senate Fire Door which had been opened shortly before by two rioters who had entered through the Senate Wing Door). Similar to Henson, McDonald took and sent videos on January 6th on a social media account. The court imposed a sentence of 21 days' incarceration in that case. Henson took videos inside the building, he entered the building through a window in the same area as McDonald and witnessed chaos before entering the building. Henson's case presents similar aggravating factors and therefore a similar sentence is warranted.

Other rioters who climbed through windows adjacent to the Senate Wing Doors were sentenced to similar periods of incarceration. In *United States v. Carson Lucard*, 21-cr-87 (BAH), the defendant was sentenced to 21 days' intermittent confinement for his conduct at the Capitol including, climbing through a window to gain access to the building and staying inside the building for nearly 23 minutes. In *United States v. Jeremiah Carollo*, 22-cr-44 (APM), the defendant was sentenced to 21 days' incarceration as a condition of probation for his conduct at the Capitol, including witnessing police and violence before entering the building, going inside the building with his codefendants, and entering the Capitol building by climbing through a window adjacent to the Senate Wing Door. While no case has the same aggravating factors, the defendants' conduct in the cases mentioned above are similar and this warrants a similar sentence of 21 days' incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is

"firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[5] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to

---

[5] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Henson must pay $500 in restitution, which reflects in part the role Henson played in the riot on January 6.[6] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Henson's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 85.

## VI.    Fine

Henson's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) and (2)(G) subject him to a statutory maximum fine of $5,000. S*ee* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense

---

[6] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994). Here, the defendant has shown a modest ability to pay (PSR ¶ 54), thus pursuant to the considerations outlined in U.S.S.G. § 5E1.2(d), the Court has authority to impose a fine. § 5E1.2(a), (e).

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Henson to 21 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Henson liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BY:    Nialah S. Ferrer
_____
Nialah S. Ferrer
Assistant United States Attorney
New York Bar No. 5748462
601 D Street, NW
Washington, D.C. 20530
(202) 557-1490
Nialah.Ferrer@usdoj.gov

13